IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONALD WAYNE THIELEMAN | § | |
| | § | |
| v. | § | C.A. NO. C-08-167 |
| | § | |
| NATHANIEL QUARTERMAN | § | |

## MEMORANDUM AND RECOMMENDATION
## TO GRANT RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Petitioner Donald Wayne Thieleman filed this pro se habeas corpus petition

pursuant to 28 U.S.C. § 2254, challenging his conviction for burglary of a

habitation.  (D.E. 1).  Respondent moves for summary judgment asserting that

petitioner's claims are meritless.  (D.E. 17, at 1).  For the reasons discussed herein,

it is respectfully recommended that respondent's motion be granted, and this

habeas petition be dismissed with prejudice.

## I. JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to

28 U.S.C. §§ 2241, 2254, which provide that jurisdiction is proper where the

inmate is confined, or where the conviction was obtained.  Wadsworth v. Johnson,

235 F.3d 959, 961-62 (5th Cir. 2002).  Petitioner was convicted by the 36th

Judicial District Court of Aransas County, Texas, and jurisdiction is therefore

proper in this Court.

## II.  BACKGROUND FACTS

**A.     The Underlying Proceedings.**

Respondent has lawful custody of petitioner pursuant to a judgment of conviction and sentence of the 36th Judicial District Court of Aransas County in cause number A-02-5157-CR.  See Ex parte Thieleman, App. No. 63,994-03, at 123.  At trial, petitioner was acquitted of one count of burglary, but was convicted of another count of burglary of a habitation and sentenced to 45 years in prison. Id.

On October 26, 2006, the Thirteenth Court of Appeals of Texas affirmed petitioner's conviction and sentence.  Thieleman v. State, No. 13-03-570-CR, 2006 WL 3095366 (Tex. App. Oct. 26, 2006) (unpublished).  His pro se petition for discretionary review was refused on February 28, 2007.  Thieleman v. State, PDR No. 1817-06 (Tex. Crim. App. Feb. 28, 2007).[1]

On October 1, 2007, petitioner filed his first application for state writ of habeas corpus.  Ex parte Thieleman, App. No. 63,994-03, at 1.  On November 21, 2007, his application was dismissed without a written order on his own motion.  Id. at cover.  On March 31, 2008, he filed his second application for state habeas.  Ex parte Thieleman, App. No. 63,994-05, at 2.  On May 21, 2008, it was denied

_____

[1] The Texas Court of Criminal Appeals misspells petitioner's name in their documentation, but based on his assertions, this is the correct date of his PDR.  (D.E. 1).

without written order.  Id. at cover.

The instant petition was timely filed on May 19, 2008.  (D.E. 1, at 10).

Respondent concedes that petitioner has exhausted his state remedies.  (D.E. 16, at

5).

## B.    The Facts Of The Underlying Criminal Case.

The state appellate court established the following facts:

> Two homes were burglarized on the same night or early morning.  The State's theory of prosecution was that [petitioner], after having been seen in the second home, fled and was later apprehended while hiding in the alcove of a home on Winding Way.  [Petitioner's] theory of defense was to concede that the homes had been burglarized and to argue that he was not the burglar, but rather an unfortunate jogger who had been misidentified by the complainant and framed by members of the Aransas County Sheriff's Department.

Thieleman, 2006 WL 3095366, at *1.

## III.  PETITIONER'S ALLEGATIONS

Petitioner alleges two bases for habeas relief:

1.    The prosecution knowingly offered perjured testimony; and

2.    He was denied effective assistance of trial counsel because his

attorney:

   a.    failed to conduct adequate pretrial investigation;

   b.    failed to interview and call witnesses;

3

    c.      failed to subpoena witnesses;

    d.      failed to impeach state witnesses' credibility;

    e.      failed to suppress evidence;

    f.      failed to adequately cross-examine witnesses;

    g.      failed to present viable defense theories; and

    h.      failed to subpoena exculpatory evidence.

(D.E. 1, at 7); (D.E. 2, at 8-64).

## IV.  <u>STANDARD OF REVIEW</u>

**A.**    **Summary Judgment Standard.**

The Fifth Circuit has explained that "[a]s a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." <u>Clark v. Johnson</u>, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted). Summary judgment is appropriate when there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The party seeking summary judgment bears the initial burden of demonstrating an absence of a genuine issue of material fact and informing the court of the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which support its contention. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986);

Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  Any controverted evidence must be viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant to show that a genuine issue of material fact remains for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir. 1991).  The non-movant cannot merely rest on the allegations of the pleadings, but must establish that there are material controverted facts in order to preclude summary judgment. Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  Summary judgment is proper if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof.  Celotex, 477 U.S. at 322-23; ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438, 441 (5th Cir. 1995).

**B.    Federal Habeas Corpus Standard Of Review Pursuant To The AEDPA.**

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  Boyd v. Scott, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citations omitted).  Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts

may not grant habeas relief unless a petitioner demonstrates that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law," or was "based on an unreasonable determination in light of the facts."  28 U.S.C. § 2254(d).  Thus, "federal habeas relief is only merited where the state court decision is both incorrect *and* objectively unreasonable." Morrow v. Dretke, 367 F.3d 309, 313 (5th Cir. 2004) (emphasis in original) (citing Williams v. Taylor, 529 U.S. 362, 411 (2000)); see also Riddle v. Cockrell, 288 F.3d 713, 716 (5th Cir. 2002).  The AEDPA's provisions "ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002) (citation omitted).

The Supreme Court has concluded that the "contrary to" and "unreasonable application" clauses of § 2254(d)(1) have independent meanings.  Id. at 694 (citing Williams, 529 U.S. at 404-05).  The Bell Court elaborated on the distinctions between "contrary to" and an "unreasonable application:"

> A federal habeas court may issue the writ under the
> "contrary to" clause if the state court applies a rule
> different from the governing law set forth in our cases, or
> if it decides a case differently than we have done on a set
> of materially indistinguishable facts.  The court may
> grant relief under the "unreasonable application" clause if
> the state court correctly identifies the governing legal
> principle from our decisions but unreasonably applies it
> to the facts of the particular case.  The focus of the latter
> inquiry is on whether the state court's application of
> clearly established federal law is objectively

6

> unreasonable, and we stressed in *Williams* that an
> unreasonable application is different from an incorrect
> one.

Id. (citations omitted).

The Fifth Circuit has explained that the "contrary to" clause applies where a "state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (citation omitted). The Fifth Circuit has further determined that "§ 2254(d) permits a federal habeas court 'to review only a state court's 'decision' and not the written opinion explaining that decision.'" St. Aubin v. Quarterman, 470 F.3d 1096, 1100 (5th Cir. 2006) (citing Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002) (en banc) (per curiam)); accord Anderson v. Johnson, 338 F.3d 382, 390 (5th Cir. 2003) (citation omitted). The state court's "ultimate decision" is to be tested for reasonableness, "not every jot of its reasoning." Santellan v. Cockrell, 271 F.3d 190, 193 (5th Cir. 2001). Furthermore, a state court need not cite, or "even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" Mitchell v. Esparza, 540 U.S. 12, 16 (2003) (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

Absent a direct conflict with Supreme Court authority, habeas relief is available if a state court decision is objectively unreasonable.  Montoya v. Johnson, 226 F.3d 399, 404 (5th Cir. 2000).  A federal district court "must reverse when [it] conclude[s] that the state court decision applies the correct legal rule to a given set of facts in a manner that is so patently incorrect as to be 'unreasonable.'"  Gardner v. Johnson, 247 F.3d 551, 560 (5th Cir. 2001).  As with the "contrary to" test, the focus of the "unreasonable application" test is "on the ultimate legal conclusion that the state court reached and not on whether the state court considered and discussed every angle of evidence."  Neal, 286 F.3d at 246.

Finally, "[t]he AEDPA requires that [the Court] presume correct the state court's findings of fact unless the petitioner 'rebut[s] the presumption of correctness by clear and convincing evidence.'"  Morrow, 367 F.3d at 315 (quoting 28 U.S.C. § 2254(e)(1)).  The presumption of correctness is also accorded to adjudications made during state post-conviction proceedings.  Id.  The burden to rebut the presumption of correctness remains on petitioner even if the state "hearing was a 'paper' hearing and may not have been full or fair."  Id. (citing Valdez v. Cockrell, 247 F.3d 941, 950-51 (5th Cir. 2001)).  In some circumstances, findings of fact may be implied from conclusions of law.  See Valdez, 274 F.3d at 948 n.11 ("The presumption of correctness not only applies to explicit findings of

fact, but it also applies to those unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.") (citations omitted); <u>Goodwin v. Johnson</u>, 132 F.3d 162, 183-84 (5th Cir. 1997).

## C.   AEDPA's Deferential Standard of Review Applies To Petitioner's Claims.

The Texas courts have already considered and rejected all of petitioner's claims.  <u>Ex parte Thieleman</u>, App. No. 63,944-05, at cover.  The claims that he pursues in the instant petition were raised in his state habeas corpus application. (D.E. 1, at 8); <u>Ex parte Thieleman</u>, App. No. 63,944-05, at 7-99.  The Texas Court of Criminal Appeals denied his state habeas application without written order.  <u>Id.</u> at cover.

This denial of petitioner's application, even though it does not contain a written opinion, is not silent or ambiguous.  <u>See</u> <u>Ex parte Torres</u>, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (en banc) (holding a "denial" signifies an adjudication on the merits).  It is a decision on the merits and is entitled to the AEDPA's deference.  28 U.S.C. § 2254(d); <u>see</u> <u>also</u> <u>Neal</u>, 286 F.3d at 235 ("In the context of federal habeas proceedings, adjudication 'on the merits' is a term of art that refers to whether a court's disposition of the case was substantive.") (citation omitted). Thus, deference to the state court decision is mandated by § 2254(d).  <u>See</u> <u>Morrow</u>, 367 F.3d at 313.

# V.  ANALYSIS

**A.      The Prosecution Did Not Knowingly Offer Perjured Testimony.**

The Supreme "Court has recognized that prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" Greer v. Miller, 483 U.S. 756, 765 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).  In order to establish a habeas claim, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.'" Id. (quoting United States v. Bagley, 473 U.S. 667, 676 (1985)).  A petitioner has the burden of showing the prosecutor's action infected the trial with such unfairness that the conviction resulted from a denial of due process.  Kutzner v. Johnson, 242 F.3d 605, 609 (5th Cir. 2001) (citations omitted).  The Fifth Circuit has determined that in order for a petitioner to prevail on a denial of due process claim because the prosecution knowingly used perjured testimony, or allowed untrue testimony to go uncorrected, the petitioner must prove that: "(1) the testimony was actually false, (2) the state knew it was false and (3) the testimony was material." Faulder v. Johnson, 81 F.3d 515, 519 (5th Cir. 1996) (citation omitted).

Petitioner asserts that the prosecutor knowingly offered perjured testimony when: (1) Deputies Chad Sikel and John Rhoads testified that a male eyewitness

10

approached them and told them that a suspect had fled down Winding Way; (2)

Deputies Sikel and Rhoads testified that they found petitioner hiding on a porch;

(3) Deputy Rhoads testified that he had to go locate petitioner's vehicle; (4)

Detective Matthew Baird testified that he was almost finished with his

investigation before the owners of the home on Winding Way came to the door; (5)

Detective Baird testified that the contents of State's Exhibit 103 had been found on

petitioner at the time of his arrest; and (6) Janis Rice identified petitioner as the

burglar.  (D.E. 2, at 9-19).

**1.    Petitioner's claim that Deputies Sikel and Rhoads lied about a male eyewitness.**

Petitioner claims that the prosecution knowingly offered perjured testimony

when Deputies Sikel and Rhoads testified "that a male subject came out of his

house, claimed to be the one who saw the burglar, and gave them a description that

matched Petitioner."  (D.E. 2, at 9).  He alleges that both deputies testified that

"they observed a male subject, David Rice, standing in his driveway and went to

talk to him."  Id.  The deputies further testified that Mr. Rice told them the burglar

was wearing "a hat, blue jeans, and a dark-colored shirt," and that petitioner

matched this description.  Id.

Petitioner asserts that this testimony was false because David Rice "testified

that he never saw the burglar," and because the deputies told Detective Baird that

"they knew the eyewitness was a lady before they went to search for the suspect."
Id.  Thus, he argues, both Mr. Rice's testimony and the offense report show that
the deputies' testimony regarding the male eyewitness was false.  He further argues
that Janis Rice's statement proves that the deputies gave false testimony because,
according to that statement, "she was in the driveway when the officers ran up and
ordered her son-in-law to put his hands up."  Id.  Furthermore, Mrs. Rice's
statement indicates that she told the officers which way the suspect ran, and that
she specifically told them that he was not wearing a hat.  Id. at 9-10.

Because the prosecution had access to these statements and reports,
petitioner contends, it knew that the deputies' testimony was false.  Id. at 10.
Moreover, the testimony was material, because "it lead the jury into believing that
an eyewitness described Petitioner as the burglar resulting in a reasonable
likelihood the testimony affected the judgment of the jury."  Id.  Essentially,
petitioner argues that because the prosecution had access to the deputies' reports
and witness statements, and ample time to interview its witnesses before trial, it
should have known that the deputies were concocting a story about a male
eyewitness who perfectly described petitioner.

Deputy Rhoads testified that he spoke to Mr. Rice in his front driveway, and
that he said that somebody had run down "Retama towards Winding Way."   Ex

12

parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 130.  He explained that Mr.

Rice told him that the suspect was wearing "a ball cap and he was wearing dark

clothing."  Id. at 131.  He also testified that Mr. Rice stated that he saw the suspect

run out of his house.  Id.  Similarly, Deputy Sikel testified that Mr. Rice "ran out of

his house and stated that a male subject wearing a hat ... broke into his house and

left his house running toward Winding Way."  Id. at 142-43.

Mr. Rice testified that he ran into police officers looking for a suspect after

he ran out of his house.  Ex parte Thieleman, App. No. 63,994-05, R.R. Vol. 6, at

22.  He told officers that his wife had seen someone in the house and that she

indicated that the person had run east out of the house.  Id.  Mr. Rice also

acknowledged that he did not see the person who burglarized his house.  Id. at 25.

According to Detective Baird's incident report, "[d]eputies searched the area and

learned that a second victim, Janis Rice, [had] confronted the suspect in her home."

(D.E. 1, at 66).  In her premises owner statement, Mrs. Rice reported that she

confronted the suspect and chased him out of her home, after which everyone in

the house came outside.  Id. at 70.  She indicated that after everyone came outside,

she told the police officers that the suspect ran toward Winding Way.  Id.  Mrs.

Rice testified that she did not tell her husband that the suspect was wearing a hat.

Id. at 55.  When the police asked her if the suspect was wearing a hat, she

responded no, but also testified that he had something in his hand which could have been a hat. Id. at 48-49.

With respect to the deputies' testimony, petitioner has failed to prove that it was actually false. The Fifth Circuit has explained that contradictory testimony from witnesses, or inconsistency in a witness's testimony at trial, is a credibility issue to be resolved by the trier of fact, and is not sufficient to establish that the testimony was perjured. Koch v. Puckett, 907 F.2d 524, 531 (5th Cir. 1990) (citation omitted). Thus, assuming that any inconsistency exists between the deputies' testimony and that of Mr. and Mrs. Rice, it does not prove that the deputies perjured themselves. Moreover, that certain facts are omitted from witness statements and police reports, standing alone, is insufficient to prove perjury. United States v. Martinez-Mercado, 888 F.2d 1484, 1492 (5th Cir. 1989) (citation omitted). Accordingly, the fact that the police reports do not mention a hat and do not discuss the police speaking with Mr. Rice, does not of itself establish that the deputies committed perjury.

Finally, petitioner does not demonstrate that this testimony was material. The prosecution did not have to depend on the testimony of the deputies relaying the statements Mr. Rice made to them; it had the eyewitness testimony of Mrs. Rice, who gave an in-court identification of petitioner. Accordingly, petitioner

14

fails to demonstrate that the prosecution knowingly used false testimony, and it is respectfully recommended that this claim should be dismissed.

**2.    Petitioner's claim that Deputies Sikel and Rhoads lied about finding him on the porch.**

Petitioner next complains that the deputies gave false testimony when they claimed to have found him hiding on a porch.  (D.E. 2, at 11).  He claims that he was not hiding on a porch, but rather "flagged Deputy Sikel down in the street to report a person who he saw discard property on the side of the Conroy home and then flee the area carrying a large bag."  Id.  He alleges that Detective Baird's report and Janice Conroy's statement support his assertion.  Id.  He also maintains that Deputy Rodney Matheny would testify that he overheard an argument between petitioner and Deputy Sikel in which petitioner claimed to have flagged Deputy Sikel down.  Id.  Petitioner argues that the testimony was material because "it lead the jury into believing that Petitioner was behaving suspiciously and attempting to avoid detection by officers."  Id.  He asserts that the prosecution knew that this testimony was false because it had both Detective Baird's report and Mrs. Conroy's statement in its possession.  Id. at 11-12.  Moreover, he claims, the prosecution should have been aware that Deputy Sikel was an unreliable witness because he "has since been fired for lying on the stand and fabricating evidence."  Id. at 12.  He alleges that several law enforcement officers "have reported Deputy

15

Sikel for lying in court and/or to superiors." Id.

Petitioner claims that Mrs. Conroy's statement proves that the deputies lied about finding him on the porch because she was an "eyewitness[] to his arrest." Id. However, Mrs. Conroy's statement does not say that she witnessed his arrest; rather, she states that while she was using her computer in the morning, she heard a commotion in front of her house, and upon opening her window, she learned that it was the police searching for someone. Id. at 72.  She maintains that by the time she realized the police were in her yard, they already had a person in one of the police cars, whom she never saw. Id.  Nowhere does she indicate that she witnessed petitioner's arrest.  Petitioner argues that her statement could have been altered, because the statement is on one page, while her signature is on the other, but he offers no proof whatsoever for this claim.  Conclusory or wholly incredible allegations, unsupported by evidence, cannot serve as the basis for federal habeas relief.  See Perillo v. Johnston, 79 F.3d 441, 444 (5th Cir. 1996) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)); Smallwood v. Johnson, 73 F.3d 1343, 1351 (5th Cir. 1996) (citation omitted); Johnson v. Scott, 68 F.3d 106, 112 (5th Cir. 1995) (citation omitted).  Moreover, Detective Baird's statement says only that the Conroys "observed the deputies take the individual into custody." (D.E. 2, at 74). He does not say that the Conroys witnessed the initial confrontation between the

16

deputies and petitioner.  Instead, the statement establishes that they were not aware

that anyone was outside their home until they saw the police with their flashlights

and speaking to petitioner.  Id.  There is nothing in either Mrs. Conroy's statement,

or Detective Baird's report, that is inconsistent with the deputies' claim that they

found petitioner hiding on the Conroys' porch.

     With respect to anything Deputy Matheny might testify to, petitioner has

offered no proof as to what that testimony might be.  He offers only a letter from

Deputy Matheny by way of evidence.  However, letters are not competent

summary judgment evidence.  See Celotex Corp., 477 U.S. at 323; Williams, 836

F.2d at 960.  More importantly, petitioner's claim as to what Deputy Matheny

might testify to is irrelevant to his argument that the deputies perjured themselves

when they claimed to have found him hiding on a porch.  Finally, of the evidence

offered by petitioner to show that the prosecution should have known that Deputy

Sikel was an unreliable witness, only a "no-show, no-call" reprimand actually

occurred before petitioner's trial.  (D.E. 1, at 87-94).  Whatever this evidence may

show about Deputy Sikel's general character for truthfulness, it establishes nothing

about whether his testimony in petitioner's case is actually false, and is therefore

irrelevant.

     Petitioner fails to demonstrate that the deputies' testimony was actually

false.  Accordingly, it is respectfully recommended that his claim that the prosecution knowingly offered perjured testimony as to his location when found by police should be dismissed.

### 3.    Petitioner's claim that Deputy Rhoads lied about locating his vehicle.

Next, petitioner claims that Deputy Rhoads perjured himself when he testified that "Petitioner could not tell officers where his truck was parked and all Petitioner knew is that his vehicle was 'by some water towers.'"  (D.E. 1, at 12). He argues that this testimony was material because "[it] lead the jury into believing that Petitioner lied to officers about living in this area, was not familiar with the area as he claimed, and randomly targeted a neighborhood to rob houses in."  Id. He asserts that the prosecution knew that this testimony was false because it possessed Detective Baird's report that indicated "Petitioner knew exactly where his truck was located."  Id. at 13.

Deputy Rhoads testified that when he asked where petitioner's truck was located, petitioner told him that it was located by some water towers.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 123.  Detective Baird's report states that "Deputy Rhoads told me that [petitioner] had told him where the truck was located and that he formerly lived there."  (D.E. 1, at 76).

First, there is no inconsistency between Deputy Rhoads' testimony and

18

Detective Baird's report.  Nothing in Detective Baird's report indicates that

petitioner <u>did</u> <u>not</u> tell Deputy Rhoads that his truck was located by some water

towers.  Consequently, petitioner has failed to prove that Deputy Rhoads'

testimony concerning the location of his truck was actually false.  Moreover, he

fails to prove that the testimony was material.  The prosecution did not rely on

Deputy Rhoads' testimony concerning the location of the truck to argue that

petitioner was unfamiliar with the neighborhood; rather, it called the manager of

the apartments in which he claimed he had lived.  <u>Ex parte Thieleman</u>, App. No.

63,944-05, R.R. Vol. 6, at 9.  The manager testified that there was no record that

petitioner had ever lived at those apartments.  <u>Id.</u>  Because petitioner fails to prove

either falsity or materiality, it is respectfully recommend that his claim that the

prosecution knowingly offered false testimony as to the location of his truck

should be dismissed.

> **4.     Petitioner's claim that Detective Baird lied about the status of his investigation when the homeowners on Winding Way came to the door.**

Petitioner also claims that Detective Baird gave false testimony regarding

the status of his investigation when the Conroys came to the door.  Specifically, he

complains of Detective Baird's statements that "'initially no one would answer the

door at the Conroy residence'" and "that he was 'approximately 75% complete

with his investigation' around the Conroy home before Janice Conroy realized law enforcement officers were outside her home and came to the door to see what was going on." (D.E. 1, at 13). This claim is related to his claim that Deputies Sikel and Rhoads perjured themselves when they testified that they found petitioner hiding on the Conroys' porch.

Petitioner states that this testimony is false because it contradicts Detective Baird's own report and Mrs. Conroy's statement. Id. He claims that the Conroys were eyewitnesses to his arrest and that Mrs. Conroy gave the officers permission to begin searching around her house. Id. He argues that Detective Baird testified that he arrived at the scene after 5:00 a.m. and that he had petitioner transported to jail around 5:15 a.m. Id. Petitioner reasons that this would mean that Mrs. Conroy came to the door after 5:15 a.m., whereas her statement indicates that she answered the door at 4:30 a.m. Id. at 13-14. He argues that this testimony is material because it "was meant to conceal the fact that the Conroys were eyewitnesses to Petitioner's arrest and cover for deputies Sikel and Rhoads who lied by claiming to have found Petitioner hiding on the Conroy's porch because the Conroy's statements do not coincide with the officer's claims to have found Petitioner hiding on a porch." (D.E. 1, at 14).

As previously noted, nothing in Mrs. Conroy's statement is inconsistent with

20

the deputies' claim that they found petitioner hiding on a porch; thus, her statement does not prove that Detective Baird's testimony was actually false.  Even if there is some inconsistency between her statement and Detective Baird's testimony, it is insufficient to prove perjury.  See Koch, 907 F.2d at 531; Martinez-Mercado, 888 F.2d at 1492.  Moreover, Detective Baird's statement that he was seventy-five percent done with his investigation by the time Mrs. Conroy came to the door is not something that can be proven false; it is simply a subjective statement of the part of Detective Baird concerning how far along he thought the investigation was by the time someone answered the door.  Thus, petitioner fails to prove that Detective Baird's statement was actually false; accordingly, it is respectfully recommended that his claim that the prosecution offered perjured testimony by Detective Baird concerning his investigation at the Conroy residence should be dismissed.

**5.    Petitioner's claim that Detective Baird lied about finding the contents of Exhibit 103 on petitioner at the time of his arrest.**

Petitioner next argues that the prosecution offered perjured testimony by Detective Baird concerning the contents of State's Exhibit 103.  Specifically, he complains that "Detective Baird gave false testimony when he testified that a large quantity of change, chapstick, Vaseline, a cigarette, and two twenty-dollar bills were found in Petitioner's possession at the time of his arrest."  (D.E. 1, at 14).

21

Instead, he claims that the only items in his possession at the time of his arrest were some bills totaling 54 dollars and a watch. Id. at 15. He also asserts that Detective Baird "manipulated the bills in [his] possession by removing thirteen dollars in bills to match the amount taken in one of the burglaries." Id. He claims that this testimony was material because "Baird offered the false testimony to raise suspicion to the jury about Petitioner's claim to have been jogging as nobody jogs with cigarettes, hygiene items, and a large quantity of change on their person." Id.

Petitioner argues that the prosecution knew that Detective Baird's testimony was false because "[t]he State had a copy of all reports in this case and knew that none of the reports listed this property in Petitioner's possession." Id. He also asserts that "the arresting officer ... testified that the only property in petitioner's possession when he was searched was a watch and some bills which could have totaled 54 dollars." Id. Petitioner finally claims that Detective Baird deliberately removed the property slip at the jail which would have listed the property in his possession when he was arrested. Id. He claims that because the prosecution knew that there was a discrepancy between what Detective Baird stated and what the arresting officer testified to, the prosecution knew that Detective Baird gave perjured testimony.

First, any discrepancy between the testimony of the arresting officer and that

of Detective Baird does not prove perjury by itself.  See Koch, 907 F.2d at 531.

Second, Detective Baird testified that he took the property from petitioner before

he was taken to jail, which explains the discrepancy between the arresting officer's

description of petitioner's property and Detective Baird's.  Ex parte Thieleman,

App. No. 63,944-05, R.R. Vol. 8, at 63.  Petitioner argues that this is irrelevant,

because Detective Baird stated at trial that "he did not have petitioner's property

and had to go pick it up."  (D.E. 22, at 12).  In fact, Detective Baird testified that

"[he] just had the personal property ... when [he] picked up the $20 bills as well."

Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 59.  Thus, Detective

Baird's explanation for the discrepancy between his testimony and that of the

arresting officer has not been effectively refuted by petitioner.  Finally, petitioner's

argument that Detective Baird removed the property slip to conceal the fact that he

altered the contents of petitioner's personal property is unfounded speculation,

supported by no evidence in the record.

Petitioner fails to prove that Detective Baird's testimony regarding his

personal property is actually false; accordingly, it is respectfully recommended that

his claim that the prosecution knowingly offered false testimony in this regard

should be dismissed.

### 6.  Petitioner's claim that Mrs. Rice lied when she identified him as the burglar.

Finally, petitioner alleges that Mrs. Rice gave false testimony when she identified him as the burglar in court.  (D.E. 2, at 16).  Specifically, he takes issue with her statements that she was "face-to-face with the burglar for one to five minutes" and "was able to give the detective a fairly detailed description of the suspect."  Id.  He also objects to the specific description she gave at trial, which he claims perfectly matches his description.  Id.  He asserts that "[Mrs. Rice], at no time prior to trial, gave any indication of being able to describe the burglar and was never able to describe the burglar."  Id.  He claims that Mrs. Rice "changed her statement to favor the Prosecution and implicate Petitioner because her original description of the suspect in no way matched Petitioner."  Id.

Petitioner points to the statement Mrs. Rice gave to police on the night of the burglary, in which she states that it was dark and that when she confronted the burglar, he got up and ran out the door.  Id. at 17.  Additionally, he notes that Mrs. Rice's description "went from 'I saw a silhouette of a man' to the burglar was 'a short older man with messy hair and a receding hairline.'"  (D.E. 22, at 13).  He also points to the photo line-up from which Mrs. Rice picked his picture, noting that she also marked another picture, remarking that he had a similar hairstyle to the burglar.  Id.  He argues that the man whose picture she pointed out as having a

24

similar hairstyle to the burglar, does not have a receding hairline, but rather a full head of hair that is neatly combed.  Id.  He states that her testimony is "especially damaging because Petitioner is a short older man with a receding hairline."  Id.

The prosecution should have known this testimony was false, he contends, because "they were in possession of [Mrs. Rice's] statements and had an opportunity and an obligaiton [sic] to interview [Mrs. Rice] who was a witness for the State."  (D.E. 2, at 18).  He states that this testimony was material because it "mislead[] the jury into concluding that [she] was able to identify and describe the burglar."  Id.  Moreover, he notes, he was acquitted of the first count of burglary, where there was no identification testimony, but was convicted on the second count with Mrs. Rice's testimony.

Mrs. Rice testified at length about her encounter with the burglar in her home.  She described finding him hiding behind an ottoman, approaching him and asking who he was, and telling him to leave her house.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 31-40.  She stated that she and the burglar had stared at each other for "at least a minute; probably more."  Id. at 35.  She stated that he was "maybe [her] height" and that he "looked a lot older" than her children, and that he had "receding hair."  Id. at 36-37.  She said that "he had on dark pants, and the shirt was just a little bit lighter."  Id. at 39.  She also noticed that "he had a

little potbelly." Id.  Mrs. Rice also testified about the photo lineup from which she

picked out petitioner.  She picked out petitioner's photo, but acknowledged that

she also marked another photo because the eyes looked similar.  Id. at 41.  Finally,

she identified petitioner as the burglar.  Id. at 42.

Mrs. Rice's statement given the night of the burglary does not contradict her

trial testimony.  In it, she indicated that she saw a man she did not recognize, who

was approximately five feet eight inches tall and who had on dark pants and a light

colored shirt.  (D.E. 2, at 70).  She also mentioned that she asked the man

repeatedly who he was, and told him to get out of her house.  Id.  At trial, she

testified that she approached a man crouched behind her couch and asked him

several times who he was.  Ex parte Thieleman, App. No. 63,994-05, R.R. Vol. 6,

at 32.  She told him to leave her house.  Id. at 36.  The man had receding hair and

was probably about her height.  Id.  According to her, he had something in his hand

that might have been a hat.  Id. at 33.  Essentially, petitioner claims that because

Mrs. Rice's testimony at trial was more detailed than her original statement, she

must have committed perjury.  However, the omission of certain details from

witness statements prior to trial is not sufficient to prove perjury.  See Martinez-

Mercado, 888 F.2d at 1492.

Petitioner further argues that Mrs. Rice's statement after the photo line-up

shows that she lied on the stand.  (D.E. 24, at 11).  He asserts that Mrs. Rice "told

Detective Baird that the man in her home had the same hairstyle as the man in

picture 25....  The man in picture 25 does not have a receding hairline.  He has a

very full head of hair which is neatly combed."  Id.  He contrasts this with his own

appearance in the photo line-up, with messy hair and a receding hairline.  Id.

However, Mrs. Rice did not say that the man in picture 25 had the same hairstyle

as the petitioner; she said that "photograph number # 25 also has the roundness of

the face and the facial features are more of what I remember and the hair is

darker."  (D.E. 17, at 62).  She also claimed that "photo number # 26 appears to be

the person I seen [sic] inside my home."  Id.  There is no inconsistency between

Mrs. Rice's testimony that the man in her house had a receding hairline and her

statement given after the photo line-up.

Petitioner has failed to prove that Mrs. Rice's testimony regarding the

appearance of the man she saw in her home was actually false; accordingly, it is

respectfully recommended that he has failed to demonstrate that the prosecution

knowingly used false testimony, and his claim should be dismissed.

**B.      Petitioner Was Not Denied Effective Assistance Of Trial Counsel.**

The Fifth Circuit has determined that "under AEDPA a state court decision

rejecting a *Strickland* claim must be accepted unless it was an unreasonable

application of its teaching." Granados v. Quarterman, 455 F.3d 529, 534 (5th Cir. 2006). To prevail on a claim of ineffective assistance of counsel, a state prisoner seeking federal habeas corpus relief bears the burden of showing that: (1) counsel's performance was deficient, and (2) the deficient performance resulted in actual prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). However, a reviewing court need not consider both prongs if the court concludes that petitioner has failed to prove either. Id. at 697; Amos v. Scott, 61 F.3d 333, 348 (5th Cir. 1995) (citation omitted).

In order to show counsel's performance was deficient, petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. He must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional standards. See Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).

Counsel's challenged conduct should be evaluated from the perspective of counsel at the time the conduct occurred. Strickland, 466 U.S. at 690. Due to the difficulties inherent in engaging in this analysis without being tainted by "the distorting effects of hindsight," a court's review should be highly deferential to counsel. Id. at 689. The reviewing court must give great deference to counsel's

performance, strongly presuming that counsel has exercised reasonable

professional judgment.  Id. at 690; see also Romero v. Lynaugh, 884 F.2d 871, 876

(5th Cir. 1989) ("strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance").

The Fifth Circuit has explained that due to "the almost infinite variety of

possible trial techniques and tactics available to counsel, this Circuit is careful not

to second guess legitimate strategic choices."  Yohey v. Collins, 985 F.2d 222, 228

(5th Cir. 1993).  In addition, "[a] conscious and informed decision on trial tactics

and strategy cannot be the basis for constitutionally ineffective assistance of

counsel unless it is so ill chosen that it permeates the entire trial with obvious

unfairness."  Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) (citations

omitted); accord United States v. Jones, 287 F.3d 325, 331 (5th Cir. 2002) (citation

omitted).

Under the second prong of the Strickland two-part test, petitioner may not

simply allege, but must affirmatively prove, actual prejudice resulting from the

ineffective assistance of counsel.  Strickland, 466 U.S. at 693.  Thus, he must

affirmatively show that his counsel's actions deprived him of a fair trial.  See

Czere v. Butler, 833 F.2d 59, 63-64 (5th Cir. 1987).  Prejudice results when "there

is a reasonable probability that, but for counsel's unprofessional errors, the result

of the proceedings would have been different."  Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 372 (1993) (habeas petitioner must show that the trial result was unreliable, or the proceeding was fundamentally unfair due to counsel's deficient performance).

Petitioner has the burden of proof under the Strickland test.  See Carter v. Johnson, 131 F.3d 452, 463 (5th Cir. 1997) (holding burden of proof is on petitioner in federal habeas proceeding).  In addition, conclusory allegations of ineffective assistance of counsel do not give rise to a constitutional claim for federal habeas relief.  Collier v. Cockrell, 300 F.3d 577, 587 (5th Cir. 2002) (citations omitted); see also Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000) ("Because [petitioner] failed to set forth the nature of *any* of the errors trial counsel purportedly failed to preserve and did not set forth any resulting prejudice, the district court properly determined that these three claims of ineffective assistance were conclusory.") (emphasis in original).

Finally, in order to prove that he is entitled to federal habeas relief due to ineffective assistance of counsel, petitioner must overcome the presumption of correctness to which the state court's findings are entitled.  See Schaetzle v. Cockrell, 343 F.3d 440, 444 (5th Cir. 2003) ("It bears repeating that the test for federal habeas purposes is *not* whether [petitioner made a showing under

*Strickland*, but] ... whether the state court's decision – that [the petitioner] did *not*

make the *Strickland* showing – was contrary to, or an unreasonable application of,

the standards, provided by clearly established federal law (*Strickland*), for

succeeding on his IAC claim.").

### 1.    Petitioner's claim that counsel failed to conduct adequate pre-trial investigation.

Petitioner complains that his trial counsel failed to conduct adequate pre-trial

investigation.  Specifically, he asserts that his counsel failed to adequately

investigate State's Exhibit 80, the beer can found at the scene of the crime, and

State's Exhibit 103, the property allegedly found on petitioner at the time of his

arrest.  (D.E. 24, at 12-21).

### a.    State's Exhibit 80.

First, petitioner argues that his trial counsel failed to adequately investigate

State's Exhibit 80: the beer can found at the scene of the crime.  He maintains that

counsel ought to have tested the can for DNA evidence in order to affirmatively

prove that it was not his beer can, and that someone else had been in the

neighborhood, possibly robbing houses.  Id. at 12-13.  Respondent argues that trial

counsel likely decided not to test the beer can for DNA evidence because he feared

that it would further inculpate his client.  (D.E. 17, at 21).  A fingerprint expert

testified at trial that although he could not positively state that the fingerprints on

the beer can were petitioner's, he nevertheless thought that they were "very similar."  Id.; see also Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 175 (trial testimony of fingerprint expert).

Petitioner urges that this argument is belied by the fact that trial counsel "ATTEMPTED TO discredit this evidenc [sic] based on [petitioner's] assurances that the beer was not his."  (D.E. 24, at 13).  He claims that because his trial counsel cross-examined the deputies on whether petitioner smelled of alcohol and whether breathalyzer tests were conducted, and pointed out that the officers could not affirmatively prove that the beer can was petitioner's through the fingerprint evidence, his trial counsel clearly knew that the can was not his and was deficient in failing to make an investigation that would have shown that fact with certainty. Id.

This argument is not persuasive.  The fingerprint evidence, while not conclusive, was sufficient that a jury could determine that the beer can belonged to petitioner.  Thus, trial counsel could reasonably conclude that the best course of action would be to rely on the inconclusiveness of the evidence, rather than to conduct DNA testing that might link his client with certainty to the beer can.  The fact that petitioner's trial counsel strategically chose other means to discredit the evidence does not mean that he was deficient for not choosing the means that

32

petitioner would have preferred.  Petitioner has failed to demonstrate that his trial counsel's conduct fell outside the wide range of reasonable professional conduct; accordingly, it is respectfully recommended that his claim that counsel was deficient for failing to conduct DNA testing of the beer can should be dismissed.

### b.    State's Exhibit 103.

Petitioner next claims that his trial counsel failed to adequately investigate State's Exhibit 103, the property allegedly confiscated from him when he was arrested.  He argues that the prosecution used this exhibit to show that he was not jogging as he claimed, because no one jogs with a large amount of change, hygiene products, and cigarettes on their person.  (D.E. 24, at 17).  If his counsel had adequately investigated this property prior to trial, he claims, then his counsel would have learned that the property he actually had on his person at the time of his arrest differed from the property that Detective Baird claimed to have confiscated from him.  Id. at 14-21.

Respondent urges that this argument should be rejected because trial counsel had a copy of the property slip.  (D.E. 17, at 23); see also Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 23 (trial counsel's testimony at hearing on motion for new trial).  Petitioner claims that counsel was nevertheless deficient for failing to obtain the original property slip, because that property slip would have been

33

signed and could not have been manipulated.  (D.E. 2, at 22).  He claims that his

property was manipulated after he was booked into jail to make it appear as though

he had a large amount of change, hygiene products, and cigarettes on his person

when he was arrested.  (D.E. 24, at 15).  However, Detective Baird testified at the

hearing for new trial that he confiscated the items in Exhibit 103 before petitioner

was taken to jail; thus, the property slip is irrelevant to his testimony and could not

contradict it.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 63.

Petitioner claims that his trial counsel was deficient for failing to investigate

his version of the facts.  He asserts that his trial counsel should have interviewed

Captain Tina Kutach at the jail, as she was the only person who could have told

counsel what happened to the property slip.  (D.E. 24, at 15).  However, his trial

counsel testified at the hearing for new trial that he spoke with someone at the jail.

Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 15-16.  His claim that

Captain Kutach was the only person who could possibly have known what

happened to the original property slip is wholly conclusory and unsupported by

any evidence.  Moreover, petitioner does not produce the original property slip or

the copy that was in his trial counsel's possession; thus, he fails to demonstrate

how they differ from each other, or that either differs from the contents of Exhibit

103.  Consequently, he fails to demonstrate any prejudice from counsel's alleged

34

failure to investigate Exhibit 103; accordingly, it is respectfully recommended that this claim should be dismissed.

### 2. Petitioner's claim that counsel failed to interview and call witnesses.

Petitioner claims that his trial counsel was ineffective for failing to interview and call several witnesses.  He argues that counsel's deficient performance in this respect prevented him from adequately asserting an alibi, effectively disputing eyewitness accounts, and presenting his defensive theory that officers had conspired to fabricate evidence in order to convict an innocent man.  (D.E. 2, at 33).

### a. Sherry Shaw.

Petitioner asserts that his mother, Sherry Shaw, would have testified as an alibi witness if she had been called by trial counsel.  (D.E. 2, at 34).  He alleges that Ms. Shaw would have testified that she heard him leave the house at approximately 3:30 a.m. on the morning of the burglaries.  Id.  This is what Ms. Shaw herself testified to at the hearing on the motion for new trial.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 75-76.  Additionally, in an affidavit she swore that she heard petitioner leave her house between 3:30 and 3:45 a.m. on the morning of the burglary.  (D.E. 22, at 85).  Furthermore, she knew him to be an avid jogger, and knew that he had once resided in the apartments where

his truck was found.  Id.  She explained that he frequently wore heavy clothes when he was jogging to keep away insects and promote sweating.  Id.  Finally, she indicated that petitioner's trial counsel never attempted to contact her at any time prior to trial, and that if he had, she would have told him these facts.  Id. at 85-86.

The Fifth Circuit has explained that "when alibi witnesses are involved, it is unreasonable for counsel not to try to contact the witnesses and 'ascertain whether their testimony would aid the defense.'"  Bryant v. Scott, 28 F.3d 1411, 1415 (5th Cir. 1994) (citation omitted).  Therefore, the failure of petitioner's trial counsel to at least interview Ms. Shaw was unreasonable and deficient.  However, petitioner does not demonstrate that he suffered any prejudice because of this deficiency on the part of counsel.

Ms. Shaw's testimony provides an alibi for the first burglary, which was discovered by Ms. Donna Johns, the owner of the first home alleged to have been robbed, at about 3:00 a.m.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 182.  Petitioner was not convicted of this burglary.  The second burglary, on the other hand, was not discovered by Mrs. Rice until about 4:00 a.m. when her alarm went off.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 29.  Thus, Ms. Shaw's testimony would have provided petitioner with an alibi for the first burglary only.  Petitioner claims that "according to [Detective Baird's]

investigation, both houses were entered before 3:30 a.m.," but no such statement appears in Detective Baird's report.  (D.E. 2, at 34).  He also claims that "the police investigation concluded that the same person entered both houses and witness testimony has established that there was only one burglar."  Id. at 35.  However, the jury's determination that petitioner was guilty of one burglary but not the other casts doubt on this conclusion by petitioner, and it is not the purpose of federal habeas review to revisit the jury's fact-finding efforts.  See United States v. Cyprian, 197 F.3d 736, 740 (5th Cir. 1999).

Therefore, as Ms. Shaw's testimony would provide an alibi only for the first burglary, of which petitioner was acquitted, he has not shown that he was prejudiced by counsel's failure to interview her.  Ex parte Thieleman, App. No. 63,944-05 at 151.  Accordingly, it is respectfully recommended that petitioner's claim for ineffective assistance of counsel with regard to his counsel's failure to interview and call Ms. Shaw as a witness should be dismissed.

### b.    Janice Conroy.

Petitioner also argues that his trial counsel was deficient for failing to interview Janice Conroy, who he claims was an "eyewitness[] to Petitioner's arrest and who own[s] the home where Petitioner was allegedly found hiding on the porch."  (D.E. 2, at 35).  He alleges that Mrs. Conroy could have confirmed that the

officers were lying when they claimed to have found him hiding on the porch, which would have substantiated his claim that he actually flagged Deputy Sikel down to report someone running down Winding Way.  Id. at 36.  However, it is clear from Detective Baird's report that Mrs. Conroy and her husband did not witness petitioner's discovery.  See id. at 74.  Moreover, Mrs. Conroy's statement indicates that she was not even aware that the deputies were outside her home until they had already taken petitioner into custody.  Id. at 72.  Thus, there was nothing in the police report, or in her statement, to indicate that she was an eyewitness to petitioner's discovery, or that she could testify that he had not been found on the porch as the deputies claimed.  Petitioner claims that Mrs. Conroy's statement could easily have been altered, but he offers no evidence indicating that it actually was altered.  Id.  Therefore, there was nothing deficient in petitioner's counsel declining to interview or call Mrs. Conroy as a witness; accordingly, it is respectfully recommended that petitioner's claim for ineffective assistance of counsel for failure to interview and call Janice Conroy should be dismissed.

>>>        **c.        David Rice.**

Petitioner argues that his trial counsel was ineffective for failing to interview Mr. Rice, a potential eyewitness.  He claims that if his trial counsel had interviewed Mr. Rice, he would have learned that "the officers [were] never given

a description of the suspect that matched Petitioner and the officers claim that

David Rice told them he saw the burglar and gave them a description of the suspect

that matched Petitioner was false." (D.E. 2, at 39).  Ultimately, he argues, the

outcome of the trial would have been different if counsel had interviewed Mr.

Rice, because the jury would have evidence that "the officers lied and fabricated

evidence to implicate Petitioner in these burglaries." Id.

However, as respondent points out, Mr. Rice testified at trial that he was not

an eyewitness to the burglary and that he never gave a description of the suspect to

the deputies. (D.E. 17, at 30); see also Ex parte Thieleman, App. No. 63,944-05,

R.R. Vol. 6, at 25 (Mr. Rice's trial testimony).  Moreover, on cross-examination,

petitioner's trial counsel elicited that Mr. Rice had never seen the burglar, despite

the deputies' testimony to the contrary.  Ex parte Thieleman, App. No. 63,944-05,

R.R. Vol. 6, at 81-82.  Thus, counsel's cross-examination elicited the discrepancy

that petitioner seeks to prove.

Petitioner argues that his counsel could have impeached the deputies more

thoroughly if he had interviewed Mr. Rice prior to trial.  He claims that his trial

counsel "stumbled upon" the fact that Mrs. Rice never told her husband that the

suspect was wearing a hat. (D.E. 24, at 31).  Therefore, he concludes, his trial

counsel's failure to interview Mr. Rice was prejudicial because it left him unable to

adequately impeach the officers' credibility, a central issue in the case.  Id.

However, the fact remains that trial counsel did in fact elicit the discrepancy of which petitioner complains.  He addressed the arguments that the deputies lied when they claimed that Mr. Rice was an eyewitness, and he undermined their claim that they had been told that the suspect was wearing a hat.  The fact that his counsel did not address these issues in precisely the way that petitioner would have wished does not render his representation ineffective.  Accordingly, it is respectfully recommended that this claim should be dismissed.

### d.    Janis Rice.

Next, petitioner claims that his trial counsel was ineffective for failing to interview Mrs. Rice, the only eyewitness in the case.  (D.E. 2, at 39).  He asserts that this failure was unreasonable on the part of trial counsel because counsel ought to have interviewed the eyewitness in order to determine what the actual description of the burglar was.  Id. at 40.  Counsel's failure to interview Mrs. Rice was prejudicial, he argues, because had counsel interviewed her, he would have learned that the officers lied when they claimed that Mr. Rice was also an eyewitness.  Id.  More importantly, he claims that if counsel had interviewed Mrs. Rice, "he may have found [there] was a level of uncertainty in her description of the burglar or she was willing to change her testimony to favor the Prosecution.

40

This information could have been used to impeach the identification testimony given by Mrs. Rice or suppress it altogether." Id.

As the Fifth Circuit has explained, "[t]he failure to interview eyewitnesses to a crime may strongly support a claim of ineffective assistance of counsel." Bryant, 28 F.3d at 1415 (citation omitted).  Here, where the principal defensive theory was mistaken identity, it was unreasonable for trial counsel not to interview the only eyewitness.  However, as previously noted, petitioner's trial counsel elicited the discrepancies in the officer's testimony on his cross-examination of both Mr. and Mrs. Rice.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 25; id. at 81-82.  Thus, petitioner can prove no prejudice on that point.  As to the alleged uncertainty in Mrs. Rice's description, as has already been noted, there is no discrepancy between her pre-trial statement and her trial testimony.  Moreover, Mrs. Rice stated that she marked petitioner's photo in the line-up because "photo number # 26 appears to be the person I seen [sic] in my home."  (D.E. 2, at 71).

Petitioner claims that a number of discrepancies existed between Mrs. Rice's pre-trial statement and her trial testimony; he asserts that these discrepancies were never pointed out to the jury because they were not discovered prior to trial.  (D.E. 24, at 34).  He points to the fact that Mrs. Rice described the suspect in her statement as being 5'8" tall, while in her testimony she describes the suspect as a

"little guy."  Id.  He states that counsel never impeached her testimony that the suspect had a receding hairline and looked like he had recently worn a hat with her photo line-up statement.  Id.

However, trial counsel did elicit during cross-examination Mrs. Rice's statement that the suspect had a potbelly.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 45-46.  He also pointed out in closing that at the time of the burglary petitioner only weighed 110 pounds, and would be unlikely to have a potbelly.  Id. at 85.  He also questioned her about picking two photos in the line-up, and pointed out that she was unable to positively identify petitioner in the line-up.  Id.  Finally, the discrepancy that petitioner seems to believe exists between Mrs. Rice's statement that the suspect had a receding hairline and her choice of picture number 25 in the line-up is simply non-existent.  She testified that she chose picture number 25 because his hair was darker.  (D.E. 2, at 71).  Her statement focused on the man's hair color, not his hairstyle, as petitioner continually claims.  (D.E. 2, at 18); (D.E. 24, at 11).  Counsel could therefore not have discovered this supposed discrepancy before trial.  Again, petitioner's trial counsel elicited and argued all the discrepancies pointed out by petitioner.  He makes no argument as to what other arguments counsel should have made, nor does he point to any information counsel could have learned and did not in failing

to interview Janis Rice.  Thus, petitioner cannot show that he was prejudiced by counsel's failure to interview Mrs. Rice.  Accordingly, it is respectfully recommended that this claim should be dismissed.

### e.   Deputy Matheny, Deputy Escobar, and Detective Garcia.

Petitioner further argues that his trial counsel was ineffective for failing to interview Deputy Matheny.  (D.E. 2, at 42).  He asserts that Deputy Matheny's testimony "was vital to impeach Deputies Sikel and Rhoads."  Id.  He claims that Deputy Matheny was present during a conversation between himself and Deputy Sikel, in which it was mentioned that he had flagged down Deputy Sikel and had not been found hiding on a porch as the deputies claimed.  Id.  He offers as evidence of Deputy Matheny's proposed testimony a letter by Deputy Matheny as well as several letters questioning the reliability of Deputy Sikel.  Id. at Exs. 4, 5. He makes a similar claim regarding his attorney's failure to interview Deputy Escobar.  (D.E. 2, at 55).  However, he offers no evidence regarding Deputy Escobar's proposed testimony.

Petitioner also claims that his trial counsel was ineffective for failing to interview and call Detective Sandra Garcia.  He states that Detective Garcia's testimony was vital because she was responsible for interviewing the eyewitness, Mrs. Rice, on the morning the burglary occurred.  Id. at 44.  He asserts that he was

prejudiced in his defense because Detective Garcia could have proven that the deputies lied when they claimed to have found a witness who described him as the burglar.  Id.  Again, he provides no evidence as to how Detective Garcia would have testified, or whether she would have testified at all in his case.

Petitioner has failed to produce any competent evidence as to how Deputy Matheny would testify.  Complaints of uncalled witnesses, unsupported by affidavits or other competent evidence, are conclusory and therefore disfavored on habeas review.  See Harrison v. Quarterman, 496 F.3d 419, 428 (5th Cir. 2007) ("Ordinarily, a defendant's failure to present some evidence *from the uncalled witness* regarding that witness's potential testimony and willingness to testify would be fatal....") (emphasis in original); see also Coble v. Quarterman, 496 F.3d 430, 436 ("allegations of what a witness would have testified are largely speculative") (citations omitted); Sayre v. Anderson, 238 F.3d 631, 636 (5th Cir. 2001) (petitioner's "conclusory speculation about the effect of the unidentified favorable witness' testimony falls far short of the prima facie showing of prejudice necessary for the evidentiary hearing [he] requests").  The letters submitted by petitioner do not show what Deputy Matheny's testimony would be; moreover, even if they did, such letters are not competent summary judgment evidence.  See Celotex Corp., 477 U.S. at 323; Williams, 836 F.2d at 960.  Petitioner provides no

44

evidence that Deputy Matheny, Deputy Escobar, or Detective Garcia were available to testify, nor does he provide evidence as to what they would have testified.  He therefore fails to prove either deficiency or prejudice; accordingly, it is respectfully recommended that this claim should be dismissed.

### f.      Captain Kutach.

Petitioner next asserts that his counsel was deficient for failing to interview and call Captain Kutach as a witness.  (D.E. 2, at 45).  He claims that, had his counsel interviewed Captain Kutach, he would have found that she could have impeached Detective Baird's credibility as to the contents of Exhibit 103.  Id. Captain Kutach testified at the hearing on the motion for a new trial that Detective Baird removed petitioner's original property slip from the jail.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 49-51.  Petitioner claims that, once Detective Baird removed the signed property slip, he then claimed that petitioner had several things in his possession at the time of his arrest that had not been in his possession.  (D.E. 2, at 45).  He seems to assert that Captain Kutach's testimony would have supported this claim.

Trial counsel testified at the hearing on the motion for new trial that he had talked to some of the people at the jail about petitioner's property, but that he could find no one to substantiate his claim that his property had been manipulated.  Ex

45

parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 15-16.  Petitioner claims that

counsel was deficient for failing to interview Captain Kutach specifically because

she was the only one with knowledge as to the contents of his original property

slip.  (D.E. 2, at 47).  However, he provides no evidence to support this assertion; it

is therefore conclusory, and does not support a claim for ineffective assistance of

counsel.  Moreover, nothing in Captain Kutach's testimony at the hearing on the

motion for a new trial indicates that her testimony would have supported

petitioner's claim that his property was manipulated.  See Ex parte Thieleman,

App. No. 63,944-05, R.R. Vol. 8, at 48-52.  Thus, he fails to prove that counsel's

failure to interview Captain Kutach prejudiced him in any way in presenting his

defense.  Accordingly, it is respectfully recommended that this claim should be

dismissed.

### g.    Detective Baird.

Petitioner also claims that his trial counsel was deficient in failing to

interview Detective Baird.  (D.E. 2, at 47).  He asserts that Detective Baird took the

original property slip and refused to return it in order to conceal the fact that

someone had manipulated evidence by claiming that he had property in his

possession when he was arrested that he did not actually have.  Id.  Thus, he

argues, a proper investigation into Detective Baird, including a thorough interview,

46

would have revealed that he still had the original property slip and that he had fabricated evidence in order to convict petitioner.  Id.

First, Detective Baird testified at the hearing on the motion for a new trial that he confiscated the property from petitioner before he was booked into jail; therefore, the original slip would not have shown the property anyway, and is irrelevant.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 63.  Petitioner claims that this statement is contradicted by Detective Baird's testimony at trial. He asserts that Detective Baird testified that he had never spoken to petitioner at the scene and that he had to pick up the property in Exhibit 103 when he picked up the twenty-dollar bills that were also in evidence.  (D.E. 24, at 41).

While Detective Baird did testify that he did not speak with petitioner at the scene, that fact alone is not inconsistent with his statement that the property was confiscated from petitioner at the time of his arrest.   Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 61.  Detective Baird also testified at trial that the contents of Exhibit 103 were "the property taken from [petitioner] upon the day of his arrest."  Id. at 59.  Moreover, he never testified that he had to pick up the property when he picked up the twenty-dollar bills; what he said was that he "just had the personal property ... when [he] picked up the $20 bills as well," implying that the personal property was already in his possession when he went to pick up

47

the twenty-dollar bills.  Id.   Thus, the alleged discrepancy on which petitioner

relies for this claim is wholly unsupported by the record.

     Moreover, petitioner provides no evidence for his claim that Detective Baird

fabricated the contents of Exhibit 103; wholly conclusory allegations will not

support habeas relief.  While counsel may have been deficient for failing to

interview this witness, petitioner has failed to show that he suffered any prejudice

by this deficiency.  He has shown nothing that his counsel would have discovered

that would have helped to impeach Detective Baird or that would have been

helpful in crafting a defense.  Accordingly, it is respectfully recommended that this

claim should be dismissed.

### h.     Deputy Rhoads and Deputy Sikel.

Finally, petitioner asserts that his trial counsel was deficient for failing to

interview Deputy Rhoads and Deputy Sikel.  He claims that if counsel had

interviewed these deputies, he would have learned that the deputies were claiming

that Mr. Rice was an eyewitness to the burglary and had described petitioner as the

burglar.  (D.E. 2, at 48).  If he had been able to obtain information showing that the

officers were lying, he argues, the outcome of the proceeding would have been

different because the jury would have been shown that the officers were fabricating

evidence to link him to the offense.  Id.

However, it was clear from the officers' trial testimony that they had identified Mr. Rice as the male eyewitness to whom petitioner refers.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 131, 145.  Furthermore, petitioner's trial counsel elicited the fact that Mr. Rice had never seen the burglar on cross-examination.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 25.  He also elicited from Mrs. Rice that she had never told her husband that she saw a man wearing a hat in their home.  Id. at 55.  Moreover, on closing argument, he directly attacked the credibility of the officers' claim that Mr. Rice had come to them and described a man wearing a ball cap, pointing specifically to Mr. and Mrs. Rice's testimony on cross-examination.  Id. at 81-82.  He even went so far as to strongly imply that the officers were lying about the eyewitness.  Id. at 82.

Petitioner's trial counsel therefore elicited the information and made the arguments that petitioner asserts that he ought to have elicited and made. Petitioner does not point to any other information trial counsel might have obtained or other arguments that he might have made if he had interviewed these officers. He therefore fails to prove any prejudice on this point.

Petitioner also claims that his counsel was ineffective for failing to interview Deputy Sikel to determine what exactly was in his possession when he was searched.  He asserts that if his counsel had interviewed Deputy Sikel, he would

have learned that all that was in petitioner's possession when he was searched was a watch and some bills.  (D.E. 2, at 49).  This information could then be used to suppress Exhibit 103 and impeach Detective Baird's credibility as to his testimony regarding what was in petitioner's possession at the time he was arrested.  Id.  He makes much of the fact that Deputy Sikel testified that he placed the petitioner's property in a bag and then took it to the jail, where it was then inventoried.  Id.  In fact, Deputy Sikel testified that he placed petitioner's personal property in a bag and that the jail usually inventories such items; he did not testify that this happened in petitioner's case.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 154. Moreover, Detective Baird testified at the hearing on the motion for a new trial that he confiscated this property from petitioner before he was booked at the jail.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 55.

While petitioner claims that this testimony is inconsistent with Detective Baird's trial testimony, this inconsistency is not evident on the record.  Thus, there is no discrepancy between Deputy Sikel's testimony and Detective Baird's testimony with respect to the property in petitioner's possession at the time of his arrest.

Even assuming that counsel was deficient for failing to interview these witnesses, and even assuming that petitioner had actually shown an inconsistency

between Deputy Sikel's testimony and Detective Baird's, he would nevertheless

have failed to show prejudice.  As petitioner frequently reiterates, the purpose of

Exhibit 103 was to show that he was not jogging as he claimed, because no one

jogs with a large amount of change, cigarettes, and hygiene items on their person.

(D.E. 2, at 23); (D.E. 22, at 19); (D.E. 24, at 17).  However, the prosecution did not

rely solely on this evidence to cast doubt on petitioner's claim that he had been

jogging; rather, it appealed to the jury's common sense by pointing out that few

people would jog in the September heat in jeans and a long-sleeve flannel shirt.  Ex

parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 72.  Thus, petitioner cannot

show that he was prejudiced by any deficiency on the part of counsel in failing to

interview these witnesses.  Accordingly, it is respectfully recommended that this

claim be dismissed.

### 3.    Petitioner's claim that counsel failed to subpoena witnesses.

Petitioner next asserts that his trial counsel was ineffective for failing to

ensure that defense witnesses were properly served with subpoenas and were

present for trial.  (D.E. 2, at 62).  He states that he gave his trial counsel a list of

seven civilian witnesses and six law enforcement officers to subpoena and call for

trial.  Id.  Although his trial counsel requested that subpoenas be issued for these

witnesses, petitioner claims that the sheriff's department made no effort to serve

them.  Id.  He claims that his trial counsel ought to have "request[ed] a continuance

or pursue[d] any other options abailable [sic] to ensure that defense witnesses were

present for trial."  Id.

At the hearing on the motion for new trial, petitioner's trial counsel initially

testified that he had requested subpoenas on certain witnesses.  Ex parte

Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 16.  He further testified that he did

not cause these subpoenas to be served because he and petitioner had discussed

trial strategy at length and had decided that they would not call any witnesses

unless they felt it was necessary after the presentation of the prosecution's case-in-

chief.  Id. at 17.  Moreover, trial counsel felt that it was unnecessary to have

witnesses under subpoena because he "didn't know of any civilian witnesses that

would help [petitioner]" and he "had made arrangements with the Sheriff's

Department that they would make any of their people available to [petitioner] if

[he] needed to call them."   Id. at 17-18.  Petitioner suggests that his trial counsel's

claim that the decision not to subpoena witnesses was strategic is "questionable,"

but he offers no concrete evidence that counsel was lying when he testified at the

hearing on the motion for new trial.

Even if counsel's decision not to cause subpoenas to be served on defense

witnesses was not a reasonable strategic decision, however, petitioner has failed to

prove prejudice.  He has attached subpoena requests for five witnesses to his petition; he does not identify the other witnesses who were supposedly on the list he submitted to counsel.[2]  For these witnesses, he provides no evidence as to how they would testify.  Such complaints of uncalled witnesses, unsupported by affidavits or other competent evidence, are conclusory, and will not support a claim for ineffective assistance of counsel.  See Harrison, 496 F.3d at 428; Coble, 496 F.3d at 436; Sayre, 238 F.3d at 635-36.  Because petitioner provides no evidence of what these witnesses would have testified, he cannot prove prejudice; accordingly, it is respectfully recommended that this claim be dismissed.

### 4.    Petitioner's claim that counsel failed to impeach state witnesses.

Petitioner also claims that his trial counsel was ineffective because he failed to adequately investigate and impeach the credibility of certain witnesses.  (D.E. 2, at 49).  He claims that investigation into the credibility of these witnesses would have revealed that the officers were lying and fabricating evidence to tie him to the burglaries.  Id.

---

[2] In his response to respondent's motion for summary judgment, petitioner states that his witness list was read in open court at the hearing on the motion for a new trial.  (D.E. 24, at 66). However, the list of witnesses read at the hearing is identical to the subpoenas attached to the petition.  Compare Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 28-29 with (D.E. 2, at 95-104).

### a.    Deputy Sikel.

With respect to Deputy Sikel, petitioner claims that he informed his counsel prior to trial that Deputy Sikel was lying and fabricating evidence in order to incriminate petitioner.  Id. at 49-50.  He asserts that if his trial counsel had investigated these claims, he would have found that Deputy Matheny and Deputy Escobar would have supported petitioner's claim that Deputy Sikel was lying when he claimed to have found petitioner hiding on a porch.  Id. at 50.  Moreover, had trial counsel spoken to Deputy Matheny and Deputy Escobar, he would have learned that similar complaints had been made against Deputy Sikel in other cases; he could then have subpoenaed Deputy Sikel's disciplinary file and would have been able to use that information to impeach Deputy Sikel's credibility.  Id.

Petitioner claims that Deputy Sikel's disciplinary file shows that prior to his trial, he had been reprimanded for missing work and then lying to his superiors.  Id.  He also asserts that the disciplinary records indicate that "numerous other officers ... has [sic] reported Sikel for lying in court."  Id.  He maintains that "the County Attorney and the District Attorney have raised questions regarding Sikel's honesty, credibility and reliability, informing the Sheriff of Aransas County that their offices would be reluctant to prosecute anymore cases where Sikel would be a witness."  Id.  Finally, he claims that Deputy Sikel, subsequent to his trial, was

54

fired for lying on the stand and fabricating evidence.  Id.

With respect to Deputy Matheny and Deputy Escobar, petitioner has provided no competent evidence of what their testimony would be; his claims that their testimony would impeach Deputy Sikel's credibility are wholly unsupported by the record, and therefore do not suffice to support a claim of ineffective assistance of counsel.  With respect to Deputy Sikel's disciplinary records, only the "no-call, no-show" reprimand occurred prior to petitioner's trial.  (D.E. 2, at 90).  Thus, petitioner's trial counsel cannot have been deficient for failing to uncover what did not exist at the time of his trial.  Petitioner argues that these disciplinary records, although they refer to events occurring after his trial, nevertheless indicate a deceptive pattern of behavior by Deputy Sikel which could have been uncovered by counsel.  (D.E. 24, at 50).  However, he provides no evidence to that effect, and so his claim remains conclusory.  See Harrison, 496 F.3d at 428; Coble, 496 F.3d at 436; Sayre, 238 F.3d at 635-36.  Accordingly, it is respectfully recommended that this claim be dismissed.

### b.   Detective Baird and Deputy Rhoads.

With respect to Detective Baird and Deputy Rhoads, petitioner claims that an investigation into these officers would have revealed two witnesses, Marcie Roederschiner and Rescindo Barcarte, who would have testified that these officers

lied and fabricated evidence.  (D.E. 2, at 50).  However, as he provides no evidence

as to what these individuals would testify, his claim is conclusory and, accordingly,

it is respectfully recommended that it be dismissed.  See Harrison, 496 F.3d at 428;

Coble, 496 F.3d at 436; Sayre, 238 F.3d at 635-36.

### 5.    Petitioner's claim that counsel failed to suppress evidence.

Petitioner further asserts that his trial counsel was ineffective because he

failed to file motions to suppress Exhibit 103 and Mrs. Rice's in-court

identification.  (D.E. 2, at 28-33).  He claims that these two pieces of evidence

were vital to the prosecution's case and that, had counsel acted to suppress them,

the outcome of the trial would have been different.  Id.

### a.    Exhibit 103.

First, petitioner argues that his counsel should have filed a motion to

suppress Exhibit 103, the property allegedly found in his possession at the time

that he was arrested.  (D.E. 2, at 28).  He asserts that he instructed his trial counsel

to file a motion to suppress this evidence if the original property slip could not be

located, because the original property slip was the only document that would

accurately reflect the property that was in his possession at the time of his arrest.

Id.  The motion would have had merit, because the arresting officer testified that

petitioner had only a watch and some bills in his possession, and that he took the

property to the jail where it was inventoried.  Id. at 29.  Moreover, Captain Kutach

testified that Detective Baird, against departmental policy, took the only copy of

the signed property slip and would not return it.  Id.  He claims that the testimony

of these two officers is in complete contrast to Detective Baird's testimony, and

that, therefore, a motion to suppress would have been successful.  Id. at 29-30.

Counsel's failure to file a motion to suppress changed the outcome of the trial

because the contents of Exhibit 103 were used to prove that petitioner was not

jogging as he claimed.  Id. at 30.

        The lack of a property slip to prove that the evidence was in the possession

of officers from the time petitioner was arrested is a chain-of-custody argument.

Such an argument goes to the weight of evidence rather than to its admissibility.

Shields v. Dretke, 122 Fed. Appx. 133, 150 (5th Cir. 2005) (per curiam)

(unpublished) (citing United States v. Sparks, 2 F.3d 574, 582 (5th Cir. 1993)).

Petitioner's trial counsel could not have been deficient for failing to move for

suppression where no basis for suppression existed.

        Moreover, Detective Baird testified that he confiscated the contents of

Exhibit 103 before petitioner was taken to jail.  Ex parte Thieleman, App. No.

63,944-05, R.R. Vol. 8, at 63.  Contrary to petitioner's assertions, Detective

Baird's trial testimony does not contradict his hearing testimony.  See Ex parte

Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 59.  Therefore, the property slip

would not have shown the contents of Exhibit 103 in any case, and is irrelevant to

the chain-of-custody question.

To the extent that petitioner is asserting that Detective Baird fabricated

Exhibit 103 in an attempt to incriminate him, he provides no evidence to support

that claim.  Conclusory or wholly incredible assertions will not support habeas

relief.  See Perillo, 79 F.3d at 444; Smallwood, 73 F.3d at 1351; Johnson, 68 F.3d

at 112.  Accordingly, it is respectfully recommended that this claim be dismissed.

### b.    Mrs. Rice's in-court identification.

Petitioner next claims that his trial counsel was ineffective for failing to file

a motion to suppress Mrs. Rice's in-court identification.  (D.E. 2, at 30).  He

asserts that he instructed his trial counsel to move to suppress the in-court

identification because Mrs. Rice's initial description did not match him and she

was unable to positively identify him at any time prior to trial.  Id.  At the hearing

on the motion for new trial, petitioner's trial counsel testified that he had not filed a

motion to suppress the in-court identification because petitioner's previous

appointed counsel had done so.  Ex parte Thieleman, App. No. 63,944-05, R.R.

Vol. 8, at 20.  He also testified that he did not pursue a hearing on the motion

because both he and petitioner decided that it would be better to address the matter

at trial rather than pre-trial.  Id.  This strategy was in part because Mrs. Rice had

picked two people out of the line-up; thus, her identification of petitioner was not

positive.  Id. at 21.  Petitioner states that his previous counsel never filed a motion

to suppress Mrs. Rice's in-court identification, and no such motion appears on the

record.  (D.E. 2, at 31).

Petitioner fails to demonstrate that a motion to suppress the in-court

identification would have been successful.  He does not allege that the photo line-

up from which Mrs. Rice picked his picture is suggestive; nor could he make such

an assertion, as Mrs. Rice picked two pictures from the line-up.  Thus, the line-up

could not have served as a basis for a motion to suppress.  See Doescher v. Estelle,

616 F.2d 205, 206 (5th Cir. 1980) (citations omitted).  Moreover, even had

petitioner alleged that the line-up was impermissibly suggestive, the fact that Mrs.

Rice had a sufficient independent basis for her in-court identification – her

recollection of the events on the night of the burglary – would still defeat

petitioner's claim that the in-court identification should be suppressed.  See

Robinson v. Alabama, 469 F.2d 690, 691 (5th Cir. 1972) (per curiam) (citations

omitted); Perry v. Texas, 456 F.2d 879, 881 (5th Cir. 1972) (per curiam) (citations

omitted).

Petitioner's trial counsel cross-examined Mrs. Rice extensively on her

ability to see the burglar.  He asked her about the color of the burglar's shirt, and

why she said that there might have been a hat in the burglar's hand.  <u>Ex parte</u>

<u>Thieleman</u>, App. No. 63,944-05, R.R. Vol. 6, at 47.  He also asked her why she

picked another picture out of the line-up in addition to petitioner's.  <u>Id.</u> at 50.  He

also pointed out in closing that petitioner was wearing jail clothes in the line-up

and that Mrs. Rice did not positively identify him as the burglar.  <u>Id.</u> at 85.  He also

contrasted her statement with the description the police gave of the suspect.  <u>Id.</u> at

81.  Thus, counsel effectively made the argument that Mrs. Rice's in-court

identification of the suspect was inconclusive.  His conduct did not fall outside of

the wide range of reasonable professional conduct; accordingly, it is respectfully

recommended that this claim be dismissed.

### 6.     Petitioner's claim that counsel failed to adequately cross-examine witnesses.

Petitioner next argues that his trial counsel was deficient because he failed to

adequately cross-examine certain witnesses about facts relevant to petitioner's

defense.  (D.E. 2, at 56).  He specifically asserts that trial counsel failed to properly

cross-examine Mr. Rice, Mrs. Rice, Detective Baird, and Deputy Rhoads.  <u>Id.</u> at

56-62.

### a.    Mr. Rice.

Petitioner argues that his trial counsel did not effectively cross-examine Mr. Rice as to the deputies' claim that he was an eyewitness and gave them a description of the suspect that matched petitioner.  (D.E. 2, at 56).  He asserts that an effective cross-examination of this witness would have shown that the deputies were lying when they claimed to have found a male eyewitness who identified him as the burglar.  Id.

However, counsel's cross-examination of Mr. Rice elicited the fact that he never saw the burglar.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 25.  Moreover, counsel used this fact in his closing statement to suggest that the officers were lying when they said that they had been told that the suspect was wearing a hat.  Id. at 82.  Thus, counsel elicited precisely the information from this witness and used it to make exactly the argument that petitioner claims he should have made.  Therefore, he fails to demonstrate that counsel's conduct was deficient in this respect; accordingly, it is respectfully recommended that this claim be dismissed.

### b.    Mrs. Rice.

Next, petitioner argues that counsel was ineffective in his cross-examination of Mrs. Rice.  He claims that if counsel had effectively cross-examined her as to

61

her inability to give a specific description of the burglar or to positively identify petitioner before trial, doubt would have been cast on her ability to make a positive in-court identification.  (D.E. 2, at 57).

However, counsel questioned Mrs. Rice extensively about her ability to see the burglar.  He asked her about the color of his shirt and how much light was in the room.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 42-43, 45.  He also elicited from her that the suspect had a receding hairline and a potbelly.  Id. at 46.  He also strongly suggested that her statement that the suspect might have had a hat in his hand might have been influenced by the prosecution.  Id. at 46-48.  Furthermore, he elicited the fact that the suspect was carrying a duffle bag.  Id. at 49.  Moreover, he questioned her extensively about choosing another picture in the photo line-up.  Id. at 50.

In closing, counsel used all of these facts to make an argument casting doubt on Mrs. Rice's in-court identification of petitioner.  First, he highlighted the fact that the police had never found the duffle bag that Mrs. Rice said the suspect was carrying.  Id. at 82.  He also pointed out that petitioner would not have had a potbelly on the day of his arrest because of his weight.  Id. at 85.  Finally, he argued that Mrs. Rice was not positive in her identification of petitioner in the photo line-up.  Id.  He noted that "[s]he is not even convinced beyond a reasonable

doubt that he is the same guy." Id.

The record shows that counsel made the arguments that petitioner claims he should have made. He argued that Mrs. Rice was not positive about her identification of petitioner in the photo line-up, that her statement to police did not exactly match her testimony, and that the light in the living room had not been very good. The fact that the jury chose to believe her in-court identification does not render counsel's conduct deficient. Accordingly, it is respectfully recommended that this claim be dismissed.

### c.    Detective Baird.

Petitioner also argues that his trial counsel was ineffective for failure to properly cross-examine Detective Baird, specifically as to the property that was in petitioner's possession at the time of his arrest, the state of the investigation when the Conroys answered their door, and the male eyewitness. (D.E. 2, at 58-61).

Petitioner claims that if counsel had effectively cross-examined Detective Baird as to the property found in his possession at the time of his arrest, he would have "brought into question the integrity of the investigation and the reliability and credibility of Baird's testimony." Id. at 59. Had he thoroughly cross-examined him, he would have elicited the fact that Detective Baird took the original property slip from the jail and that none of the property in Exhibit 103 appears in any of

Detective Baird's reports.  Id. at 58-59.  First, the booking slip was irrelevant to

this exhibit, as this property was confiscated from petitioner before he was taken to

jail.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 59.  Thus, any

information about the original property slip that could be elicited from Detective

Baird on the stand would not have been helpful.

   Moreover, as petitioner consistently points out, the purpose of Exhibit 103

was to prove that he had not been jogging as he claimed because no one jogs with a

large amount of change, cigarettes, and hygiene items on their person.  (D.E. 2, at

23); (D.E. 22, at 19); (D.E. 24, at 17).  However, the prosecution did not rely solely

on Exhibit 103 for this claim.  Rather, they relied on the jury's common sense for

the proposition that no one would jog in the September heat in jeans and a long-

sleeved flannel shirt.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 72.

Thus, petitioner cannot show that he was prejudiced by any deficiency on the part

of counsel in failing to thoroughly cross-examine this witness on this point.

   Petitioner also claims that his counsel was deficient for failing to thoroughly

cross-examine Detective Baird about his investigation when the Conroys answered

their door.  Specifically, he asserts that his counsel was deficient for failing to

impeach Detective Baird on his claim that "Petitioner had been removed from the

scene and the investigation was practically finished [outside] the Conroy home

before the Conroys realized that law enforcement was outside their home and came to the door to see what was going on." (D.E. 2, at 59). Petitioner alleges that there are discrepancies between pre-trial statements, including Mrs. Conroy's statement and Detective Baird's own report, and Detective Baird's testimony, which show that Detective Baird was giving false testimony in order to support the deputies' claim that petitioner had been found hiding on the Conroy's porch. Id.

At trial, Detective Baird testified that he was probably seventy-five percent finished with his investigation when Mrs. Conroy answered the door. Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at 51. First, his statement that he was seventy-five percent finished with his investigation by the time anyone answered the door at the Conroy residence is simply an opinion on his part; it is not something that can be proven false by impeachment evidence. Moreover, to the extent any discrepancy is possible, Mrs. Conroy's statement tends to support, rather than undermine, Detective Baird's characterization of his investigation as nearly complete when she answered the door. In her statement, she notes that when she asked the officers what they were doing, they responded that they were looking for someone in her yard, and that they already had someone in one of the police cars. (D.E. 2, at 72). This implies that petitioner was already in custody by the time she spoke to law enforcement. Moreover, Detective Baird's report

indicates only that Mrs. Conroy observed the deputies take an individual into custody. (D.E. 2, at 74). Neither statement shows what petitioner seeks to prove, which is that the deputies lied when they said they found petitioner hiding on the porch and that Detective Baird gave false testimony in order to perpetuate that lie. Because any minor discrepancies that may exist among these statements do not support petitioner's claim that the deputies lied, he fails to prove prejudice.

Finally, petitioner claims that his trial counsel was deficient because he failed to cross-examine Detective Baird about the male eyewitness who described him as the burglar. (D.E. 2, at 60). He asserts that if counsel had thoroughly cross-examined Detective Baird about his report and Mrs. Rice's statement, he would have elicited that Mrs. Rice was the real eyewitness to the burglary. Id. He claims that such cross-examination would have called into question the credibility of the deputies who claimed that Mr. Rice gave them a description of the suspect that matched petitioner. Id. at 60-61.

Regardless of whether counsel could have elicited this information from Detective Baird on cross-examination, he did elicit it from Mr. Rice on cross-examination. Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 25. It was clear from the deputies' testimony that the male eyewitness about whom they testified was Mr. Rice. Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 5, at

66

119, 143.  Thus, once petitioner's trial counsel elicited the fact that Mr. Rice never saw the burglar, he made the point that petitioner argues he should have made in cross-examining Detective Baird.  Counsel was not deficient for declining to make the same point twice.

Because petitioner has failed to demonstrate prejudice with respect to any of his claims regarding the cross-examination of Detective Baird, he fails to assert a claim of ineffective assistance of counsel; accordingly, it is respectfully recommended that this claim be dismissed.

### d.    Deputy Rhoads.

Lastly, petitioner contends that his trial counsel was ineffective for failing to adequately impeach Deputy Rhoads on his testimony concerning the location of petitioner's truck.  (D.E. 2, at 61).  He claims that Deputy Rhoads' testimony left a false impression that he did not know where his truck was located and that the deputies had to go find it, undermining his claim that he had lived and jogged in the area for four years.  Id.

Regardless of whether counsel was deficient in cross-examining Deputy Rhoads, petitioner cannot show prejudice.  Deputy Rhoads' testimony was not the only or even the most persuasive evidence on which the prosecution relied to undermine his claim that he had lived and jogged in the area for several years.  At

67

trial, the manager of the apartment complex where petitioner's truck was located

testified that he had no record showing that petitioner had ever been a resident

there.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 9.  Thus, even if

counsel had effectively impeached Deputy Rhoads' testimony concerning the

location of the truck, the testimony of the complex manager would nevertheless

have made the same point.  Therefore, petitioner has failed to prove that counsel's

conduct, even if deficient, caused prejudice; accordingly, it is respectfully

recommended that this claim be dismissed.

### 7.    Petitioner's claim that counsel failed to present viable defense theories.

Petitioner also asserts that his counsel was ineffective because he failed to

independently investigate several defenses.  Specifically, he complains that his

counsel failed to investigate his alibi, the identification of the suspect, and his

claim that police fabricated a story about finding him hiding on a porch.  (D.E. 2, at

51-56).

### a.    Alibi.

First, petitioner alleges that his counsel was deficient for failing to make an

independent investigation into his alibi defense.  (D.E. 2, at 51).  He asserts that,

had counsel made such an investigation, he would have found that Ms. Shaw

would have testified that she heard petitioner leaving her house at approximately

3:30 a.m., providing him with an alibi for both burglaries.  Id.

This claim essentially reiterates petitioner's claim that counsel was ineffective for failing to interview and call Ms. Shaw as a witness; thus, the same arguments apply.  While counsel was deficient for failing to interview an alibi witness, Ms. Shaw's testimony would have provided an alibi only for the first burglary, of which petitioner was acquitted.  Accordingly, petitioner fails to show prejudice, and it is respectfully recommended that this claim be dismissed.

### b.    Mistaken identity.

Petitioner next asserts that his counsel was deficient for failing to investigate his claim that the officers lied when they claimed to have found a male eyewitness who gave a description matching petitioner.  (D.E. 2, at 53).  He claims that, had counsel interviewed Mr. and Mrs. Rice, he would have learned that the male eyewitness the police claimed had given them a description matching petitioner was actually Mr. Rice, and he would have learned that Mrs. Rice was the actual eyewitness, whose description did not match petitioner.  Id.

This claim echoes petitioner's claim that counsel was deficient for failing to interview Mr. and Mrs. Rice.  Again, while counsel was deficient for failing to interview an eyewitness in a case in which the defense was mistaken identity, he nevertheless suffered no prejudice.  The fact that Mr. Rice was not an eyewitness

69

and the infirmities in Mrs. Rice's description of the burglar were adequately addressed on cross-examination.  Accordingly, it is respectfully recommended that this claim be dismissed.

### c.  Police fabrication.

Finally, petitioner argues that counsel was deficient for failing to independently investigate his claim that the deputies were lying when they claimed to have found him hiding on a porch.  (D.E. 2, at 54).  He argues that his counsel should have interviewed the Conroys, who he claims were eyewitnesses to his arrest, in order to dispute the deputies' claim.  Id.  He also asserts that counsel should have interviewed Deputy Matheny and Deputy Escobar in order to undermine Deputy Sikel's credibility and expose the fact that he was lying about finding petitioner on the porch, when in reality, petitioner flagged him down in the street.  Id.

First, nothing in Mrs. Conroy's statement or Detective Baird's report indicates that she was an eyewitness to the initial encounter between the deputies and petitioner.  Petitioner fails to offer any evidence that Mrs. Conroy's testimony would have supported his claim that he was not found hiding on the porch. Moreover, he offers no evidence as to what Deputy Matheny and Deputy Escobar would testify.  Thus, this claim is conclusory and wholly unsupported by the

evidence; accordingly, it is respectfully recommended that this claim be dismissed.

### 8.   Petitioner's claim that counsel failed to subpoena exculpatory evidence.

Petitioner also claims that his counsel was deficient for failing to subpoena the signed property slip that would have listed his property when he was booked into the jail.  (D.E. 2, at 26).  He claims that the signed property slip would have shown that he was not wearing a hat at the time he was booked into the jail, and would also have shown that he did not have a large amount of change, hygiene products, and cigarettes on his person.  Id.

First, petitioner has not produced either the original property slip or the copy which counsel said he had in his possession.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at 23.  Thus, it is impossible to say what would have been on the original property slip, and petitioner's claim that the original property slip may have been altered is wholly conclusory.  Moreover, counsel undermined the deputies' claim that they had been told the suspect was wearing a hat when he elicited from Mrs. Rice that she had not seen the suspect wearing a hat and she had not told her husband that the suspect was wearing a hat.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 6, at 47, 55.  Thus, he cannot show prejudice on this point arising from counsel's failure to subpoena the original property slip.

Furthermore, as Detective Baird testified that he confiscated the property in

71

Exhibit 103 prior to petitioner's being booked into jail, the property slip is

irrelevant to that exhibit.  Ex parte Thieleman, App. No. 63,944-05, R.R. Vol. 8, at

59.  Moreover, petitioner has failed to produce any evidence that Detective Baird

fabricated this exhibit; thus, this allegation is conclusory and will not support

habeas relief.  See Perillo, 79 F.3d at 444; Smallwood, 73 F.3d at 1351; Johnson,

68 F.3d at 112.  As petitioner fails to prove prejudice, he fails to assert a claim of

ineffective assistance of counsel, and it is respectfully recommended that this claim

be dismissed.

## C.     Petitioner's Request For an Evidentiary Hearing.

In his response to respondent's motion for summary judgment, (D.E. 22),

petitioner renews his request for an evidentiary hearing.  However, he has failed to

present evidence sufficient to prove he is entitled to an evidentiary hearing.  The

Fifth Circuit has explained that "[a] hearing in a habeas proceeding is required only

when, inter alia, the record reveals a genuine factual dispute."  Tague v. Puckett,

874 F.2d 1013, 1015 (5th Cir. 1989) (emphasis added); see also Murphy v.

Johnson, 205 F.3d 809, 815-17 (5th Cir. 2000) (discussing basis for evidentiary

hearing).

It is respectfully recommended that petitioner has not presented indicia of

the merit of his contentions, and that there is no genuine factual dispute that would

warrant an evidentiary hearing.

## VI.  <u>CERTIFICATE OF APPEALABILITY</u>

An appeal may not be taken to the Fifth Circuit from a final order in a habeas corpus proceeding "[u]nless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although petitioner has not yet filed a notice of appeal, it is respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability.  A district court may <u>sua</u> <u>sponte</u> rule on a certificate of appealability because "the district court that denies a petitioner relief is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious." <u>Alexander v. Johnson</u>, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

The statute establishes that " [a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003).  To warrant a grant of the certificate as to claims denied on their merits, "[t]he petitioner must

73

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). This standard requires a § 2254 petitioner to demonstrate that reasonable jurists could debate whether the motion should have been resolved differently, or that the issues presented deserved encouragement to proceed further. United States v. Jones, 287 F.3d 325, 329 (5th Cir. 2002) (citation omitted).

As to claims district courts reject solely on procedural grounds, a petitioner must show both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Slack, 529 U.S. at 484 (emphasis added).

It is respectfully recommended that reasonable jurists could not debate the denial on substantive or procedural grounds nor find that the issues presented are adequate to proceed. Miller-El, 537 U.S. at 327 (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court find that petitioner is not entitled to a certificate of appealability.

## VII.  RECOMMENDATION

Based on the foregoing, it is respectfully recommended that respondent's motion for summary judgment, (D.E. 17), be granted and that the petition be

74

dismissed with prejudice.  Furthermore, it is respectfully recommended that petitioner's request for an evidentiary hearing be denied.  Finally, it is respectfully recommended that petitioner be denied a certificate of appealability.

Respectfully submitted this 14th day of January 2009.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## <u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C); Rule 72(b) of the Federal Rules of Civil Procedure; Rule 8(b) of the Rules Governing § 2254 Cases; and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).